982 So.2d 74 (2008)
Randolph WIGHTMAN, Appellant,
v.
STATE of Florida, Appellee.
No. 2D06-5055.
District Court of Appeal of Florida, Second District.
April 25, 2008.
Rehearing Denied May 29, 2008.
*75 James Marion Moorman, Public Defender, and James T. Miller, Special Assistant Public Defender, Bartow, for Appellant.
Bill McCollum, Attorney General, Tallahassee, and Elba Caridad Martin, Assistant Attorney General, Tampa, for Appellee.
FULMER, Judge.
Randolph Wightman appeals his convictions for two counts of sexual battery on a child under twelve, for which he received concurrent life terms. Because the trial court erred in allowing the State to introduce evidence of multiple acts of uncharged crimes, we reverse for a new trial.[1]
The State charged Wightman in a two-count information with sexual battery occurring between the five-year time span of October 1984 and July 1989. Count one alleged penetration of and/or union with the vagina of R.B. by the mouth of Wightman. Count two alleged penetration of and/or union with the penis of Wightman by the mouth of R.B. At the time of trial in 2006, the victim was twenty-six years old.
When the first witness, the victim, R.B., testified, she indicated that it was difficult for her to remember things and she could not remember dates or times from when she was seven, eight, and nine years old. The defense objected to a general question by the prosecutor about Wightman becoming sexually abusive ("when you say he became sexually abusive, what specifically do you mean by that?"), arguing that the question was too general and "she may be getting into some collateral acts." The defense counsel suggested the prosecutor could lead the witness "and go to the two acts that are alleged." The prosecutor agreed to do that. The prosecutor then asked the victim if she could recall how many times Wightman "had you put your mouth on his penis." The victim indicated she could not recall, prompting the prosecutor to ask, "More than a handful?" The defense then moved for mistrial, which was argued at the bench.
During the discussion on the motion, the defense pointed out that the State had not filed a notice of intent to rely on Williams *76 rule evidence.[2] The prosecutor asserted that the State had charged "representative counts," and claimed the defense has "known all along there are no specific dates and times." The defense argued: "At this point she has testified to collateral acts and I don't know under what authority she can . . . elicit testimony about collateral acts. There's one specific act that is charged." The prosecutor countered: "Again, they're on notice of these incidents as one representative count. [The victim] can't give a specific date and time; she can say it happened multiple times. That gives the act."
The court denied the motion, and the victim testified in general terms to molestation by oral sex that occurred repeatedly. Only one specific incident was recounted by both the victim and her mother. The victim and her mother gave conflicting accounts of what occurred during that incident.[3]
On appeal, the State does not attempt to defend the prosecutor's position at trial that the allegations were "representative counts," and that general testimony of repeated abuse was permitted to prove the two counts alleged. Instead, the State advances two arguments that were not made below to justify the victim's general testimony of numerous abusive acts.
First, the State argues that the evidence of uncharged crimes was not Williams rule evidence because it was relevant as inextricably intertwined evidence. We reject this justification because this case does not present a situation where "inextricably intertwined" evidence of uncharged acts is necessary to describe the crime charged. Cf. Griffin v. State, 639 So.2d 966, 968-69 (Fla.1994) (discussing why other-crime evidence was inextricably intertwined and thus relevant as an inseparable part of the act which was in issue). Here, the assertion that Wightman committed the similar acts of molestation multiple times on different undetermined dates was not necessary for an understanding that the two discrete acts charged in the information took place at any time.
The State next argues that the evidence was admissible under section 90.404(2)(b)(1), Florida Statutes (2006). This section expressly makes admissible other crimes or acts of child molestation. But in order to invoke this section at trial, the State was required to give the defendant ten days before trial "a written statement of the acts or offenses it intends to offer, describing them with the particularity required of an indictment or information." § 90.404(2)(c)(1). And, any collateral crime evidence admitted under section 90.404(2)(b) is subject to a section 90.403 analysis for the danger of unfair prejudice. See McLean v. State, 934 So.2d 1248, 1262 (Fla.2006) (discussing the trial court's responsibilities when admitting evidence of prior acts of molestation when offered to corroborate the victim's testimony). Because Wightman was not given the pretrial notice and the other due process safeguards discussed in McLean were not employed, *77 the State cannot invoke section 90.404(2)(b) to justify the admission of other-crime evidence in this case.
Accordingly, we reverse Wightman's convictions because the trial court erred in allowing the victim to testify to general allegations of repeated acts of abuse and it appears that this error contributed to the verdict.
Reversed and remanded for a new trial.
NORTHCUTT, C.J., and WHATLEY, J., Concur.
NOTES
[1] Our reversal renders moot the second issue raised on appeal pertaining to the victim's identification of Wightman, for which Wightman also seeks a new trial. We therefore do not address it.
[2] See Williams v. State, 110 So.2d 654 (Fla. 1959). The State did not file a Williams rule notice. The record does not reflect that any pretrial motions were filed, nor does it show a defense request for a statement of particulars.
[3] The victim testified that Wightman was performing oral sex on her when her Mother walked in the room. When the victim was impeached with her prior inconsistent statements about that incident, having previously said at a deposition that she was giving him oral sex, she stated: "Well, I don't recall. I was seven." The mother testified that she saw Wightman laying on the bed and R.B. was kneeling beside him "sucking on his penis."